Association of Pennsylvania State College and University Faculties, Pennsylvania Association for Higher Education/Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.

Argued December 7, 1977, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Rogers, Blatt and DiSalle.

*Robert W. Barton,* with him *Killian & Gephart,* for petitioner.

*Thomas W. Lane* and *William D. Dade,* with them *John D. Thrush; Morgan, Lewis & Bockius; James L. Crawford;* and *Forest N. Myers,* for respondents.

OPINION BY JUDGE CRUMLISH, JR., March 10, 1978:

The Association of Pennsylvania State College and University Faculties/Pennsylvania Association for Higher Education (APSCUF) appeals the determination of the Pennsylvania Labor Relations Board (PLRB) that State College and University Administrators (SCUA) are not included in the bargaining unit (Unit II) for which APSCUF has been certified to represent. Unit II presently consists of only those college and university administrators who are also faculty members of the state university system but APSCUF would like to include as part of Unit II those administrators who are not faculty members, commonly referred to as SCUA.

This action arises out of a proceeding before the PLRB initiated by the Commonwealth of Pennsylvania (Commonwealth) to clarify the composition of the unit for which APSCUF had previously been certified. APSCUF argued before the PLRB that Unit II had been originally intended to represent all persons performing administrative functions whether the person had faculty or non-faculty status or, in the alternative, Unit II should be expanded to include all persons who perform similar functions. PLRB held that Unit II had been certified to represent only faculty admin-

istrators and that "administrators without faculty status do not share a 'community of interest' with administrators with faculty status." The instant appeal followed.

In a case such as this, "we are limited in our review as to a determination of whether the findings of the Board are supported by substantial and legally credible evidence and whether its conclusions based on the facts are reasonable and not capricious, arbitrary or illegal." *Western Psychiatric Institution and Clinic v. Commonwealth*, 16 Pa. Commonwealth Ct. 204, 211, 330 A.2d 257, 261 (1974).

As to PLRB's holding that Unit II had been intended to include only faculty members, it will suffice to say that there was overwhelming evidence to support that conclusion. All witnesses, including those of APSCUF, testified to that effect. We affirm the PLRB as to that issue.

We also affirm the PLRB's holding that Unit II should not be expanded to include administrators who are not faculty members because they do not share an identifiable community of interest with administrators who are faculty members.

Pursuant to Section 604 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.604 (Act 195):

In determining the appropriateness of the unit, the board shall:

(1) Take into consideration but shall not be limited to the following: (i) public employes must have an identifiable community of interest, and (ii) the effects of over-fragmentization.

In reviewing the appropriateness of the bargaining unit established by the PLRB, we must also remember that "the Board, as other such administrative agencies, is considered to be experienced and to possess expertise in the subject committed to its adminis-

tration and therefore to be better qualified than this or other courts of law to weigh the facts and to appreciate the complexities of the subject of labor relations, including the appropriateness of a proposed bargaining unit." *Western Psychiatric Institution and Clinic v. Commonwealth, supra,* 16 Pa. Commonwealth Ct. at 211, 330 A.2d at 261. Upon careful review of the record, we cannot say that the evidence in support of the PLRB's finding that non-faculty members should be excluded from Unit II was not substantially or legally credible or that its conclusions were capricious, arbitrary or unreasonable. To the contrary, the conclusion that faculty and non-faculty administrators do not share an identifiable community of interest was based upon tangible and significant differences in the requirements for their jobs, requirements for advancement, and the prerogatives and rights of these two groups in the institutions at which they are employed. The PLRB noted in finding No. 6 of its order that administrators with faculty status differ from administrators without faculty status in

> [t]hat administrators with faculty status can attain 'tenure' status . . .; are entitled to sabbatical leave . . .; are paid a base salary plus certain administrative increments because of their faculty status . . .; have the right to review the credentials of individuals who are hired as administrators with faculty status . . .; are entitled to fifteen (15) days sick leave per year . . .; are entitled to bereavement leave . . .; can accumulate unlimited sick leave . . .; are eligible for 'distinguished Faculty Awards' . . .; normally work the academic calendar of the institution where they are employed . . .; can participate in 'faculty committees and academic senates' . . .; are covered by Act 182 which establishes various academic ranks, establishes the basic pay struc-

ture for the academic ranks and establishes minimum educational requirements for achievement for those ranks. . . .

Additionally, the PLRB noted that non-faculty administrators cannot and do not teach.

Aside from a similarity in job function, faculty and non-faculty administrators have many different interests. APSCUF implies that all that is required for a finding of "community of interest" is a similarity of job function. This is not the case. By its use of the term "community of interest," Act 195 explicitly recognizes that there are factors other than job function which differentiate the interests of co-workers. This case, as supported by the findings cited by the PLRB, exemplifies this concept. The administrators who are faculty members retain the prerogatives and privileges of academic faculty. The non-faculty administrators have none of these privileges. Because they may not fulfill the prerequisite for faculty rank,[1] they may not receive the privileges thereof; similarly, the prerogatives of the administrators who are faculty members are guaranteed by statute and may not be abrogated.[2] Given the above, it is difficult to see how the two categories of employees could be properly represented by one unit; therefore, the APSCUF contention that this ruling leads to an over-fragmentization of the bargaining units is without foundation.[3]

---

[1] The prerequisites for faculty rank are delineated in Section 2 of the Act of January 18, 1952, P.L. (1951) 2111, *as amended*, 24 P.S. §1864.2 (Act).

[2] The prerogatives of faculty rank are contained in Sections 2, 3, 3a, 5 and 6 of the Act, 24 P.S. §§1864.2, 1864.3, 1864.3a, 1864.5 and 1864.6.

[3] APSCUF also argues that the Unit II employees are being improperly replaced by SCUA personnel. Aside from the fact that such an argument has no place in a unit clarification petition, we note that the collective bargaining agreemeent between APSCUF

244

Accordingly, we

ORDER

AND Now, this 10th day of March, 1978, the decision of the Pennsylvania Labor Relations Board is affirmed.

---

and the Commonwealth explicitly cites Section 2 of the Act, 24 P.S. §1864.2, as permitting the Commonwealth to employ persons without faculty rank to replace administrators who are part of the faculty.