**LANCASTER COUNTY, Petitioner**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2012.

Decided Jan. 4, 2013.

Publication Ordered March 15, 2013.

Susan R. Friedman, Lancaster, for petitioner.

Amy L. Rosenberger, Philadelphia, for intervenor, AFSCME District Council 89.

Warren R. Mowery, Jr., Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge (P.), and BROBSON, Judge.

OPINION BY President Judge PELLEGRINI.

Lancaster County (County) petitions for review of an order of the Pennsylvania Labor Relations Board (PLRB) affirming a decision of a Hearing Examiner that the County committed an unfair labor practice in violation of Section 1201(a)(1) and (5) of the Public Employe Relations Act (PERA)[1] by refusing to implement an interest arbitration award (Award) because the County did not meet its burden of demonstrating that implementation of the Award would require legislative enactment under Section 805 of the PERA.[2] We affirm.

AFSCME, District Council 89 (Union) has been certified by the PLRB as the exclusive representative of a bargaining unit including prison guards employed by the County. On April 16, 2009, a panel of arbitrators issued the Award amending Article 15 of the existing collective bargaining agreement (CBA) providing a shift differential of 700 per hour for employees working the 4:00 p.m. to midnight or midnight to 8:00 a.m. shifts that increased to 750 per hour effective January 1, 2010, and to 800 per hour effective January 1, 2011.

---

1. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.1201(a)(1), (5). Section 1201(a)(1) and (5) state:

> (a) Public employers, their agents or representatives are prohibited from:
> (1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.
>
>      *     *     *
>
> (5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

2. 43 P.S. § 1101.805. Section 805 provides, in pertinent part:

> Notwithstanding any other provisions of this act where representatives of units of guards at prisons ... have reached an impasse in collective bargaining and mediation as required in section 801 of this article has not resolved the dispute, the impasse shall be submitted to a panel of arbitrators whose decision shall be final and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only.

Article 15 was also amended to provide a $14.38 per hour starting rate of pay for new corrections officers and was increased to $14.88 per hour effective January 1, 2010, and to $15.88 per hour effective January 1, 2011. With respect to current employees, it provided a salary increase of 750 per hour effective January 1, 2009; a 500 per hour increase effective July 1, 2009; a 750 per hour increase effective January 1, 2010; a 500 per hour increase effective July 1, 2010; a 750 per hour increase effective January 1, 2011; and a 500 per hour increase effective July 1, 2011.

The County did not appeal the award and implemented the provisions for 2009. On November 18, 2009, the County's Board of Commissioners passed a resolution rejecting the financial terms of the Award for 2010 and 2011, including the provisions regarding increased wages and differentials, because it determined that the financial terms of the Award for 2010 and 2011 were merely advisory under Section 805 of PERA because the implementation of those terms would require the appropriation of funds and/or the levying of taxes.

When the County failed to implement the wage and differential increases in January 2010, the Union filed an unfair labor practice charge with the PLRB under Sections 1201(a)(1) and (5) of the PERA. The County appealed to this Court the PLRB's determination that its actions constituted an unfair labor practice, arguing that the Award was merely advisory under Section 805 because its implementation would require a legislative enactment. In *Lancaster County v. Pennsylvania Labor Relations Board*, 35 A.3d 83 (Pa.Cmwlth.2012), this Court rejected the County's assertion. Specifically, we held that "[t]he transfers of available unencumbered funds are not legislative acts within the meaning of Section 805 of the PERA even though the County Commissioners must vote on such transfers. Although implementing the financial provisions of the Award for 2010 would undoubtedly cost the County a significant sum, up to approximately $650,000.00, Commissioner Martin admitted in his testimony that at the end of the year there was approximately $3 million in unreserved funds left in the County's general fund...." *Lancaster County,* 35 A.3d at 90. We also noted that the Union had filed an unfair labor practice charge with respect to the County's determination that the Award was advisory for 2011 as well, but that the PLRB's Hearing Examiner determined that this charge was prematurely filed because the County had not yet failed to implement those increases and neither party filed exceptions to that portion of the proposed decision and order. *Id.* at 85 n. 3.

In December 2010, the Board of Commissioners passed resolution No. 117 of 2010 adopting an operating budget of $263,467,757.00 for 2011 without a tax increase. The operating budget included an anticipated year-end fund balance of $3,891,981.00. The County calculated that the cost of implementing the wage and differential increases in the Award for 2011 would be $1,317,873.00. On January 1, 2011, the County did not pay the differential and salary increases for its corrections officers as provided in the Award.

On January 24, 2011, the Union filed an unfair labor practice charge with the PLRB alleging that the County violated Sections 1201(a)(1) and (5) of the PERA by failing to implement the 2011 wage and differential increases effective January 1, 2011. On September 6, 2011, the Union filed an amended charge after the County failed to implement the wage and differential increases effective July 1, 2011. The County filed an answer denying that it had

refused to implement the binding provisions of the Award and that the charges were untimely filed under Section 1505 of the PERA[3] because they should have been filed within four months of the resolution passed by the Commissioners in November 2009 rejecting the financial terms of the Award.

Following a hearing, the PLRB's Hearing Examiner determined that the charge and amended charge were timely filed and that the County committed an unfair labor practice under Section 1201(a)(1) and (5) of the PERA by refusing to implement the financial terms of the Award for 2011. The County filed exceptions with the PLRB.

The PLRB determined that a charge is not ripe until the employer's decision actually has an effect on the employee's wages. While the Commissioners resolved in 2009 that the award would be advisory for 2011, it was not until 2011 that the employees' wages were impacted through the budgetary process. It noted that Sections 1780–1783 of the County Code[4] provides that the County's taxes are set and funds are allocated annually for a particular fiscal year. The PLRB found that the County must meet and consider an award during the current fiscal year after taxes have been levied and funds appropriated or during the budget process when taxes are assessed and funds appropriated and if it desires to declare an award advisory under Section 805. The PLRB held that the County had not met, considered and rejected the Award in 2011 or in 2010 during the preparation or adoption of the 2011 budget so that the Award was final and binding for 2011.

The PLRB also found that the County failed to establish that a legislative enactment was required to implement the Award. To do so, the PLRB stated that the employer has to show that it would be required to levy further additional taxes to pay for the Award and that it was required to use any surplus in the budget to fund the award. The PLRB found that the County would not have to raise taxes to fund the award because the County's 2011 operating budget included a year-end fund balance of $3,891,981.00 in unencumbered funds that are sufficient to cover the County's projected $1,317,873.00 cost to fund the Award.

Because it had failed to declare by legislative enactment the award advisory and failed to sustain its burden of demonstrating the need for a legislative enactment to raise taxes because it had sufficient surplus funds available to fund the award, the PLRB dismissed the County's exceptions and made the Hearing Examiner's Proposed Decision and Order absolute and final, and the County filed the instant appeal.[5],[6]

**3.** 43 P.S. § 1101.1505. Section 1505 states, in pertinent part, that "[n]o petition or charge shall be entertained which relates to acts which occurred or statements which were made more than four months prior to the filing of the petition or charge."

**4.** Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. §§ 1780–1783.

**5.** On May 21, 2012, the Union filed a notice of intervention in the County's appeal.

**6.** Our scope of review is limited to determining whether an error of law was committed, whether there was a violation of constitutional rights, or whether the PLRB's necessary findings of fact are supported by substantial evidence. *Lancaster County*, 35 A.3d at 87 n. 5. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* It is the PLRB's function and not this Court's to resolve conflicts in the evidence presented, assess the credibility of witnesses, to resolve primary issues of fact and to draw inference from the facts necessary for a resolution of the matter. *State System of Higher Education v. Pennsylvania Labor Relations Board*, 757

■ The County initially contends that the instant charges were not timely filed in January 2011 and September 2011 because the four-month time limitation of Section 1505 began to run when the Commissioners passed the resolution in November 2009 rejecting the financial provisions of the Award for 2010 and 2011 of which the Union had notice. The County also argues that the Union should have filed exceptions to the Hearing Examiner's determination in the 2010 unfair labor practice proceeding in *Lancaster County* that there was no actionable charge at that time with respect to the Award's 2011 implementation.

■ The four-month limitations period for the filing of an unfair labor practice charge under Section 1505 of the PERA is triggered when the complainant has reason to believe that the unfair labor practice has occurred. *Commonwealth v. Pennsylvania Labor Relations Board,* 64 Pa. Cmwlth. 84, 438 A.2d 1061, 1063 (1982).[7] Thus, the four-month limitations period does not start to run from an employer's statement of a future intent to engage in conduct constituting an unfair labor practice. *Lancaster County v. Pennsylvania*

*Labor Relations Board,* 761 A.2d 1250, 1254–55 (Pa.Cmwlth.2000).[8]

While the County peremptorily declared in the November 2009 resolution that the Award was merely advisory for 2010 and 2011 under Section 805 of the PERA, we agree with the Board because it is not until the year in question that the budgeting process begins. As the Pennsylvania Supreme Court has explained:

[In] November and December of each year, budget requests are made from the various departments or agencies in the county, which are compiled into the official county annual budget. The rate of taxation is then set in order to provide funding for items in the budget. Thus, it is this process whereby "taxes are levied" and "funds are appropriated[" for purposes of Section 805].

*County of Allegheny v. Allegheny Court Association of Professional Employees,* 517 Pa. 505, 514, 539 A.2d 348, 353 (1988) (*ACAPE* ). *See also* Section 1782(a) of the County Code, 16 P.S. § 1782(a) ("The proposed budget shall be prepared and

---

A.2d 442, 447 (Pa.Cmwlth.2000), *appeal denied,* 565 Pa. 659, 771 A.2d 1293 (2001).

7. *See also Dormont Borough v. Pennsylvania Labor Relations Board,* 794 A.2d 402, 407 (Pa.Cmwlth.2002) (holding that the six-week limitations period for the filing of an unfair labor practice charge under Section 9(e) of the Pennsylvania Labor Relations Act (PLRA), Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. § 211.9(e), runs from when the complainant has reason to believe that the unfair labor practice has occurred); *Fraternal Order of Police Haas Memorial Lodge # 7 v. Pennsylvania Labor Relations Board,* 696 A.2d 873, 876 (Pa.Cmwlth.1997) (holding that the six-week limitations period for the filing of an unfair labor practice charge under Section 6(1)(e) of the PLRA, 43 P.S. § 211.6(1)(e), runs from when the complainant has reason to believe that the unfair labor practice has occurred).

8. *See also Association of Pennsylvania State College and University Faculties v. Pennsylvania Labor Relations Board,* 661 A.2d 898, 901–02 (Pa.Cmwlth.1995) ("A refusal to bargain charge will be dismissed as premature when the action at issue has not been implemented, leaving the PLRB unable to determine its relative impact on the parties involved and unable to dispositively rule upon whether an unfair practice has occurred. In such a case, as here, it is imperative that the PLRB be able to determine the relative impact the matter has on the parties because only those matters which have a greater impact on employee terms and conditions of employment than on the basic policy of the employer's system as a whole are mandatorily bargainable. The determination that the present charge was premature, and its subsequent dismissal, was proper.") (citation and footnote omitted).

adopted not later than December thirty-first...."); Section 1783 of the County Code, 16 P.S. § 1783 ("The budget shall reflect as nearly as possible the estimated revenues and expenditures for the year for which it is prepared. The commissioners shall, upon adopting the budget, adopt the appropriation measures required to put it into effect, and shall fix such rate of taxation upon the valuation of the property taxable for county purposes as will, together with all other estimated revenues of the county, excluding operating, capital and other reserve funds, raise a sufficient sum to meet the said expenditures."). It was not until that budget process was underway that the County could determine in good faith and declare that there were insufficient funds available to fund the Award.

The unfair labor practice that triggered the County's failure to implement the terms of the Award in its 2011 budget should have been determined through the above budgeting process, not the resolution adopted in November 2009 in which the County declared its future intent to engage in such conduct.[9] As explained by the Supreme Court in *ACAPE*, the refusal to implement the Award in the 2011 budget is the proper event from which the instant charges flowed.[10] Accordingly, the PLRB did not err in determining that the instant unfair labor practice charges were timely filed in January 2011 and the County's claim to the contrary is without merit.

As to the merits, the County argues that the PLRB erred in determining that there was a year-end fund balance of $3,891,981.00 that could be used to fund the $1,317,873.00 required to implement the 2011 wage and differential increases in the Award. The County claims that $2,951,808.00 that is in "Other Funds" are legally mandated fiduciary funds used to fund Children and Youth Services, Mental Health and Mental Retardation, Capital Projects, the Pension Trust, and the Agency Fund,[11] leaving only $940,173.00 remain-

9. The fact that the Union filed an amended charge following the County's failure to implement the wage and differential increases effective July 1, 2011, is of no moment because the Union's initial charge was filed within four months of the County's failure to implement the Award in its 2011 annual budget. *See* Section 1302 of the PERA, 43 P.S. § 1101.1302 ("Whenever it is charged by any interested party that any person has engaged in or is engaging in any such unfair practice, the board ... shall have authority to issue and cause to be served upon such person a complaint, stating the charges in that respect.... Any such complaint may be amended by the board ... at any time prior to the issuance of an order based thereon....").

10. The PLRB decisions relied upon by the County to support a contrary conclusion are not binding on this Court. *Neshannock Educational Support Professionals Association, PSEA/NEA v. Pennsylvania Labor Relations Board*, 22 A.3d 1103, 1106 n. 4 (Pa.Cmwlth. 2011). Moreover, to the extent that *County of Lehigh v. American Federation of State, County, and Municipal Employees, District Council 88, Local 543, AFL–CIO*, 95 Pa.Cmwlth. 486, 505 A.2d 1104 (1986) could compel a contrary conclusion, this Court has noted that "[t]he opinion[ ] of this Court in ... *County of Lehigh* predate[s] the Supreme Court opinion in [*ACAPE* ]. Moreover, and more importantly, we are compelled to follow the dictates of the Supreme Court in [*ACAPE* ] ...." *Lycoming County v. Pennsylvania Labor Relations Board*, 943 A.2d 333, 348 n. 27 (Pa.Cmwlth. 2007). Finally, *Fraternal Order of Police Haas Memorial Lodge # 7* and *Commonwealth* are inapposite because in both of those cases, the provisions of the award were already effective at the time of the employer's declared noncompliance whereas, in this case, the County's declared noncompliance in the form of the November 2009 resolution predated its failure to implement the Award's 2011 wage and differential increases by over a year.

11. In support of its allegation of error, the County cites to evidence that was presented to but not accepted by the PLRB in issuing its Final Order. As noted, it is the PLRB's func-

ing in the General Fund, and the County must keep that balance to remain fiscally sound, maintain a favorable bond rating, and meet its financial obligations.

■ In order for a public employer to declare an interest arbitration award advisory under Section 805 of the PERA, the employer must demonstrate that a legislative enactment is required, i.e., that funds must be appropriated or taxes levied and, if so, that the public employer has met, considered and rejected the award. *ACAPE*, 517 Pa. at 513, 539 A.2d at 352–53; *Franklin County Prison Board v. Pennsylvania Labor Relations Board*, 491 Pa. 50, 61–62, 417 A.2d 1138, 1143–44 (1980).

The question here, as in *Lancaster County*, is whether the County sustained its burden of showing a lack of sufficient unmarked funds that are available in the annual budget to fund the Award for 2011, and that in order to implement the wage and differential increases in the Award, it would need to raise taxes or appropriate funds.

Under *Lancaster County* and *ACAPE*, the County's claim that the funds that have been allocated to the "Other Funds" account is likewise unavailing. Evidence in this case demonstrates that at least some of the alleged objects of the Other Funds that is urged by the County are needed to fund social programs and are not actually part of the General Fund portion of the County's budget where the Other Funds line item is located. (R.R. at 122a–23a, 124a–25a). In addition, as the PLRB noted, the County cites absolutely no testimonial or documentary evidence regarding that $2,951,808.00 remaining in the County's Other Funds that was unavailable and encumbered and could not be used to fund the 2011 wage and differential increases in the Award. *See ACAPE*, 517 Pa. at 515–16, 539 A.2d at 354 ("[W]here there is money available in the government's general fund or from other items with surplus funds, we hold that in order to effectuate the policy and intent of [the PERA], such money must administratively be transferred to fund a legally binding arbitration award.... [S]ince it has not been shown that there were no other items in the budget with excess or surplus funds available for administrative transfer to the salary account, we find that the arbitration award ... must be implemented.").

In sum, the County's budget has $3,891,981.00 in unmarked funds remaining in both the General Fund and the Other Funds for the 2011 wage and differential increases that can be used to fund the $1,317,873.00 necessary to implement the Award without raising taxes. (R.R. at 459a, 783a.) As in *ACAPE* and *Lancaster County*, the County failed to sustain its burden of proving the need for a legislative enactment that would render the Award advisory under Section 805 of the PERA and unconstitutional under Article 3, Section 31 of the Pennsylvania Constitution. Accordingly, as in *Lancaster County*, the Board did not err in concluding that the County violated Sections 1201(a)(1) and (5) of the PERA by refusing to implement the 2011 wage and differential increases of the Award.[12]

tion and not this Court's to resolve conflicts in the evidence, assess the credibility of witnesses, to resolve primary issues of fact, and to draw inference from the facts necessary for the resolution of the matter. *State System of Higher Education*, 757 A.2d at 447. Accordingly, we will not accede to the County's request to reconsider and reweigh the evidence presented in this case.

12. The County also alleges that the PLRB erred in determining that it failed to satisfy the "meet and consider" requirement because the Union never argued that it failed to satisfy this requirement and the Hearing Ex-

Accordingly, the PLRB's order is affirmed.

## ORDER

AND NOW, this 4th day of January, 2013, the order of the Pennsylvania Labor Relations Board dated April 27, 2012, at No. PERA–C–11–28–E, is affirmed.

aminer did not address this requirement in the Proposed Decision and Order. However, because we are affirming the PLRB's determination that the County did not satisfy its burden of proving that the implementation of the Award did not require a legislative enactment in the first instance, we need not address whether the County also satisfied the "meet and consider" requirement.