## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Association of Pennsylvania State : 
College and University Faculties, : 
            Petitioner : 
             : 
          v. :         No. 966 C.D. 2017
             : 
Pennsylvania Labor Relations Board, : 
          Respondent : 

# O R D E R

NOW, April 19, 2018, upon consideration of intervenor Pennsylvania State System of Higher Education's application for reargument, the application is denied to the extent it seeks reargument, but reconsideration is granted.

The opinion and order filed February 28, 2018, are withdrawn.

The attached opinion and order are entered.

 

 

MARY HANNAH LEAVITT
President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Association of Pennsylvania State : 
College and University Faculties, : 
             Petitioner : 
             : 
        v. : No. 966 C.D. 2017
           : Argued: February 6, 2018
Pennsylvania Labor Relations Board, : 
          Respondent : 

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI            FILED: April 19, 2018

The Association of Pennsylvania State College and University Faculties (Association) petitions for review of a Final Order of the Pennsylvania Labor Relations Board (PLRB) finding that the Pennsylvania State System of Higher Education (State System) did not commit an unfair labor practice by enacting a policy requiring all faculty to submit to background clearances and report criminal arrests or findings of child abuse. The PLRB held that the State System had a managerial prerogative in these issues and, therefore, did not have to bargain over the policy.

**I.**

The State System is comprised of 14 universities located throughout the Commonwealth, and the Association is the exclusive bargaining unit representative of faculty members employed by the State System and its universities. There are approximately 6,000 full-time, part-time and temporary regular university faculty members in the Association's bargaining unit. The Association and the State System are parties to a collective bargaining agreement (CBA) which was effective from July 1, 2011, through June 30, 2015. The parties began bargaining over a new contract in August 2014 and had been in mediation pursuant to the Public Employe Relations Act (PERA)[1] since September 2014.

This case began when the State System's Board of Governors (Board) assembled a Safety of Minors on Campus Work Group (Work Group) "to examine situations in which minors visit university campuses and to evaluate policies and procedures associated with those activities to ensure a safe environment." (Reproduced Record (R.R.) at 218a.) On July 8, 2014, the Board approved the first version of its Protection of Minors Policy (Policy) which was to become effective December 31, 2014. This version of the Policy required universities to establish and implement criminal background screening policies and procedures, and specified that all members of the university community, contractors and volunteers are mandated reporters of suspected child abuse.

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101 – 1101.2301.

This version of the Policy was never implemented. On October 22, 2014, the General Assembly passed Act 153, an amendment to the Child Protective Services Law (CPSL), 23 Pa. C.S. §§ 6301-6386. Act 153 expanded the CPSL's definition of "school" and thus "school employee"[2] to include employees of institutions of higher education. It required all "school employees" to provide their employer with background clearances from the Pennsylvania State Police and the Department of Human Services, as well as a criminal history report obtained from the Federal Bureau of Investigation (FBI). Act 153 made background clearances a pre-condition of employment for every "school employee", required all "school employees" to resubmit their background clearances every 30 months as a condition of continued employment, and if a background check revealed a disqualifying conviction, an employee was subject to dismissal. Moreover, Act 153 made all "school employees" mandated reporters of child abuse and required them to provide their employer with written notice of an arrest or conviction within 72 hours or face prosecution. Act 153 became effective December 31, 2014.

Given the passage of Act 153, the Board voted to amend the Policy on January 22, 2015. The Policy now provides that all faculty are considered mandated reporters of child abuse and states, in pertinent part, that "[a]ll employees and volunteers are required to have criminal background screening clearances in accordance with applicable procedures, standards, and guidelines as established by the chancellor." (R.R. at 160a.) In conformity with Act 153, the Policy requires all employees, volunteers and program administrators to provide notice to the university

---

[2] The definition of "school employee" in Act 153 specifies that "[t]he term excludes an individual who has no direct contact with children." 23 Pa. C.S. § 6303(a).

3

within 72 hours of an arrest or conviction for a disqualifying offense, or upon being named as a perpetrator in a founded or indicated report of child abuse. The State System implemented the amendments to the Policy immediately[3] and began collecting clearances for current employees in April 2015.

The parties' CBA expired on June 30, 2015. The very next day, on July 1, 2015, the Governor signed into law Act 15 of 2015 (Act 15), again amending the CPSL. In Act 15, the General Assembly limited the requirement for obtaining background checks and reporting requirements to only those faculty members and employees of institutions of higher education that have direct contact with minor children who are not enrolled in the university. Act 15 provides:

> (a.1) School employees.--This section shall apply to school employees as follows:
>
> * * *
>
> (2)(i) School employees not governed by the provisions of the Public School Code of 1949 [Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 – 27-2702] shall be governed by this section.
>
> (ii) This paragraph **shall not apply to an employee of an institution of higher education whose direct contact with children, in the course of employment, is limited to either:**

---

[3] The parties met on January 28, 2015, specifically for impact bargaining over the amended Policy, including payment of fees for obtaining clearances, transferability of clearances, discipline under the Policy and confidentiality of clearances. The Association requested to resume talks, but no further sessions were held as the State System maintained that any impact bargaining should occur "at the main table" during bargaining for the successor CBA that was already underway.

**(A) prospective students visiting a campus operated by the institution of higher education; or**
**(B) matriculated students who are enrolled with the institution.**

(iii) The exemption under subparagraph (ii)(B) shall not apply to students who are enrolled in a secondary school.

23 Pa. C.S. § 6344(a.1) (emphasis added).[4]

Because of Act 15, the Association demanded bargaining over the application of the Policy, contending the large majority of faculty members are now exempt from the requirements of the CPSL because they have no contact with un-matriculated children in the classroom.

Taking the position that requiring background checks for current employees is a matter of managerial prerogative, the State System refused to bargain. It asserted that it had the authority to adopt and enforce the Policy under its enabling legislation,[5] and that there was nothing in Act 15 that required the Board to repeal its

---

[4] Act 15 also lengthened the time between resubmission of clearances from 30 months to every 60 months. 23 Pa. C.S. § 6344.4. Notably, Act 15's amendments to the CPSL did not disturb the provisions regarding disqualification from employment or terms for "dismissal." *See* 23 Pa. C.S. § 6344(c.1).

[5] Section 2006-A of the Public School Code of 1949 titled "Powers and duties of the board of governors" provides, in pertinent part, as follows:

> (a) The Board of Governors shall have overall responsibility for planning and coordinating the development and operation of the system. The powers and duties of the Board of Governors shall be:

**(Footnote continued on next page…)**

5

Policy or made the Policy on background checks unlawful.  The Board did offer to continue to bargain impact of the Policy under the successor CBA.[6]

## II.

On August 18, 2015, the Association filed an Unfair Practice Charge (Charge)[7] alleging that the State System violated Sections 1201(a)(1) and (5) of PERA[8] by refusing to bargain over application of the Policy, and that the Policy

---

**(continued…)**

\* \* \*

> (4) To establish broad fiscal, personnel and educational policies under which the institutions of the system shall operate.

\* \* \*

> (14) To make all reasonable rules and regulations necessary to carry out the purposes of this article and the duties of the board.

> (15) To do and perform generally all of those things necessary and required to accomplish the role and objectives of the system.

24 P.S. § 20-2006-A.

[6] In December 2016, the parties ratified a successor CBA which is effective from July 1, 2015, through June 30, 2018.  This new CBA does not address the issues of background checks or the reporting requirements.

[7] The Association also filed a grievance on August 7, 2015, alleging violations of the CBA. As of the filing of the briefs in this case, the parties were still awaiting the issuance of an award by the arbitrator.

[8] 43 P.S. § 1101.1201(a)(1) and (5).  Section 1201(a) provides, in pertinent part:

> (a) Public employers, their agents or representatives are prohibited from:

**(Footnote continued on next page…)**

6

implicates mandatory subjects of collective bargaining. The Charge also claimed that the Policy's background checks and arrest reporting requirements are being applied to all faculty members when certain faculty are now exempt from these requirements pursuant to Act 15. The Association also alleges that since the CBA expired on June 30, 2015, the State System's unilateral imposition of the background checks and reporting requirements for faculty not subject to the CPSL was a change in terms and conditions of employment during the *status quo* following contract expiration.[9]

**(continued…)**

      (1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.

***

      (5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

[9] In conjunction with the Charge and grievance, the Association also filed a petition for review in the nature of an application for preliminary and permanent injunction in this Court's original jurisdiction. *Association of Pennsylvania State College and University Faculties v. Pennsylvania State System of Higher Education*, (Pa. Cmwlth., No. 407 M.D. 2015). The Association's petition sought an order prohibiting the State System from applying the Policy insofar as it requires background checks and imposes reporting requirements on employees who it claims are exempt from such requirements under the CPSL pending adjudication of its Charge and grievance, or resolution of the issue through collective bargaining.

Following a hearing, on September 17, 2015, this Court issued an order granting a partial injunction. The September 17, 2015 order specified that all State System employees who teach any course identified as containing dual enrollees, or who are involved in programs which require them to have direct contact with minors on a regular basis, must obtain background checks. The order went on to enjoin the State System "from *requiring* all [State System] faculty members to obtain the background checks, pending a contrary arbitration decision and/or a decision of the P[LRB] determining whether the subject of background checks where not required by law is a managerial **(Footnote continued on next page…)**

7

Following a hearing that spanned three days, the Hearing Examiner issued a Proposed Decision and Order (PDO) dismissing the charge as untimely. The Hearing Examiner found that the Policy was implemented, at the latest, by February 25, 2015 – the date the Association expressed awareness of its implementation. Because the Association's Charge was filed on August 18, 2015, the Hearing Examiner determined that it was untimely under the four-month statute of limitations set forth in Section 1505 of PERA.[10] The Association filed timely exceptions.

_____

**(continued…)**

right." (R.R. at 177a.) The parties were also ordered to "meet and confer for the purpose of identifying the courses and programs in which direct contact with minors will occur and what positions within those courses and programs require a background check." (*Id.*)

The parties met but were unable to agree which teaching positions would have contact with minors. Therefore, on January 13, 2016, following a conference with the parties, this Court issued another order stating, in pertinent part:

> With respect to academic course sections, each [State System] employee teaching a 100-level course or the equivalent shall be subject to the background checks. Except as otherwise agreed to by the parties, non-matriculated minors may not enroll in an upper-level course unless a school employee who is subject to and has complied with the background checks is available to teach the course.
>
> The foregoing order shall remain in effect pending a contrary arbitration decision and/or a decision of the P[LRB] determining whether the subject of background checks where not required by law is a managerial right.

(R.R. at 179a.)

[10] 43 P.S. § 1101.1505. Section 1505 provides that "[n]o petition or charge shall be entertained which relates to acts which occurred or statements which were made more than four months prior to the filing of the petition or charge." *Id.*

8

## III.

On June 20, 2017, the PLRB issued a Final Order sustaining in part and dismissing in part the Association's exceptions and dismissing the Association's Charge on different grounds. Specifically, the PLRB reversed the Hearing Examiner's conclusion that the Charge was untimely. The PLRB noted that the Charge alleged that the State System refused a demand to bargain over background checks and reporting requirements with respect to faculty the Association believes are now exempt pursuant to Act 15. Because Act 15 did not go into effect until July 1, 2015, and the Association made this particular demand to bargain on July 21, 2015, the PLRB found that the Charge filed on August 21, 2015, was timely.

The PLRB also found that the State System did not violate the CBA or Sections 1201(1) and (5) of PERA because implementation of the Policy did not disrupt the *status quo*. While the PLRB made no new findings of fact, it provided a lengthy discussion and quoted extensively from a previous matter, *State College and University Professional Association (SCUPA) v. State System*, 48 PPER 15 (Proposed Decision and Order, 2016), *affirmed*, PERA-C-15-299-E (Final Order, May 16, 2017). The *SCUPA* case involved a similar charge of unfair practices pertaining to the State System's Policy mandating background checks and reporting requirements that was filed by the union representing non-faculty employees of the State System. In applying the relevant balancing test, the hearing examiner in *SCUPA* determined that the State System's background checks and reporting requirements were a managerial prerogative and that the State System's interests outweighed those of the non-faculty employees. Here, the PLRB found that there were no compelling factual

9

differences warranting deviation from the determination in *SCUPA* and restated the State System's managerial interest as follows:

> The State System's broad Protection of Minors policy, from which the specific charged policies in question in this matter eventually flowed, was developed in the wake of the Sandusky Scandal and the Freeh Report of 2012.[11] The concern generated by these events in the State System are completely reasonable considering how, in many ways, the State System is similar to the Pennsylvania State University, and the risks and dangers to minors on State System campuses and to the State System as a whole was directly relatable to the experience of Pennsylvania State University.... The State System was aware of a legislative attention to the very public issue and rightfully concerned of legislative attention and action concerning its practices, and felt a strong, responsible reaction was proper.

(R.R. at 573a.)

As it did in *SCUPA*, the PLRB similarly concluded that the State System's implementation of background checks and reporting requirements for all faculty under the Policy is a managerial prerogative, not a mandatory subject of bargaining, and the State System's interests in campus safety outweigh the interests of the faculty. The Association then petitioned this Court for review and the State System intervened.[12]

---

[11] We note that a background check of Jerry Sandusky would have been a "clear" report, *i.e.*, no findings of actual or indicated child abuse.

[12] In general, our review of a final order of the PLRB is limited to determining whether the findings of fact are supported by substantial evidence, and whether the PLRB violated constitutional rights, committed a procedural irregularity or erred as a matter of law. *Chester Upland School*
**(Footnote continued on next page…)**

10

**IV.**

**A.**

Before we address the issue of mandatory collective bargaining versus inherent managerial prerogatives, we must first look to the CPSL and its various amendments to determine the scope of what is legitimately at issue. As the Association acknowledges, Act 153 amended the CPSL and expanded the definition of "school employees" to include *all* employees of institutions of higher education. Pursuant to Act 153, all school employees were subject to the CPSL's background checks and reporting requirements. Act 15, however, subsequently limited these requirements as it did not require background checks if the only direct contact the employee had with minors was prospective students visiting campus or matriculated students enrolled with the institution. However, all other higher education employees are still required to have background checks – they are non-exempt.

With regard to those employees who are still required to obtain background checks by Act 15, Section 703 of PERA controls. That section provides:

> The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any

_____

**(continued…)**

*District v. Pennsylvania Labor Relations Board*, 150 A.3d 143, 149 n.2 (Pa. Cmwlth. 2016). "[I]t is well settled that a decision of the PLRB must be upheld if the PLRB's factual findings are supported by substantial evidence, and if conclusions of law drawn from those facts are reasonable, not capricious, arbitrary, or illegal." *Borough of Ellwood City v. Pennsylvania Labor Relations Board*, 998 A.2d 589, 594 (Pa. 2010) (citation omitted).

statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters.

43 P.S. § 1101.703.

The State System is not required nor can it bargain over application of the Policy to such non-exempt faculty members. *See* Section 703 of PERA; *Borough of Ellwood City v. Pennsylvania Labor Relations Board*, 998 A.2d 589, 597-98 (Pa. 2010). Therefore, the Board's Final Order is affirmed insofar as it pertains to non-exempt faculty.

## B.

With respect to faculty members who are now considered "exempt" under Act 15, the General Assembly has determined that background checks for those employees are not required. The question then is whether imposing the Policy when the General Assembly has not required it is a managerial prerogative not subject to mandatory bargaining.

Section 701 of PERA provides, in pertinent part:

> Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder . . . .

43 P.S. § 1101.701.  A public employer commits an unfair labor practice under Section 701 by making a unilateral change in a subject of mandatory bargaining. *Chester Upland School District v. Pennsylvania Labor Relations Board*, 150 A.3d 143, 152 (Pa. Cmwlth. 2016).

However, Section 702 of PERA provides that an employer is not required to bargain over matters of inherent managerial policy, as it states:

> Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel.  Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives.

43 P.S. § 1101.702.  The relevant inquiry then is whether the Policy's background check and reporting requirements for faculty members exempt under Act 15 is a mandatory subject of bargaining or an inherent managerial prerogative.

Our Supreme Court provided guidance on this issue in *Pennsylvania Labor Relations Board v. State College Area School District*, 337 A.2d 262 (Pa. 1975), where it established the following balancing test:

> where an item of dispute is a matter of fundamental concern to the employes' interest in wages, hours and other terms and conditions of employment, it is not removed as a matter subject to good faith bargaining under section 701 simply

13

because it may touch upon basic policy. It is the duty of the Board in the first instance and the courts thereafter to determine whether the impact of the issue on the interest of the employe in wages, hours and terms and conditions of employment outweighs its probable effect on the basic policy of the system as a whole.

*Id.* at 268. The Court further noted that "[i]n striking this balance the paramount concern must be the public interest in providing for the effective and efficient performance of the public service in question." *Id.* at 506.

More recently, our Supreme Court noted, albeit in the context of the Pennsylvania Labor Relations Act,[13] that "bargainable matters are those that bear a 'rational relationship' to the employees' duties," and "working conditions are those subjects 'germane' to the working environment." *Ellwood City*, 998 A.2d at 598. In *Ellwood City*, our Supreme Court found that a municipal employer must bargain with its police labor organization over the enactment of an ordinance banning the use of tobacco products by everyone in its building, vehicles and equipment. In making a determination of whether a matter is the subject of mandatory bargaining, our Supreme Court offered the following guidance:

when addressing topics which straddle the boundary between ostensibly mandatory subject of bargaining and managerial prerogatives, we believe once it is determined that . . . the topic is rationally related to the terms and conditions of employment, i.e., germane to the work environment, the proper approach is to inquire whether collective bargaining over the topic would unduly infringe

---

[13] Act of June 1, 1937, P.L. 1168, No. 294, *as amended*, 43 P.S. §§ 211.1–211.3.

14

> upon the public employer's essential managerial responsibilities. If so, it will be considered a managerial prerogative and non-bargainable. If not, the topic is subject to mandatory collective bargaining.

*Id.* at 600.

In this case, current faculty members were not required to submit to background checks or report arrests or convictions to their employer prior to the State System's unilateral imposition of the Policy. Additionally, these background checks and reporting requirements directly relate to the terms and conditions of employment as, pursuant to the Policy, the results can and will be used to make tenure, firing, disciplinary and other decisions affecting faculty members' teaching ability. To collectively bargain over such topics for exempt employees would not unduly infringe upon the State System's purported essential managerial responsibility of protecting students and minors on its university premises, especially in light of the fact that the General Assembly determined those employees are not required to have background checks. Moreover, just because an employer has a "concern" does not make it a managerial prerogative under *State College* because that would mean that everything that "concerned" the public employer would be a managerial prerogative. Background checks and reporting requirements are "unlike those significant core entrepreneurial topics that are more naturally considered to be inherently managerial in nature such as decisions regarding" the State System's programs, standards of service, overall budget, use of technologies, organizational structure, and selection and direction of employees. *Ellwood City*, 998 A.2d at 601 (citing Section 702 of PERA, 43 P.S. § 1101.702).

15

For these reasons, we conclude that collective bargaining over the Policy's background checks and reporting requirements for exempt employees does not unduly infringe upon the State System's inherent managerial decision making and the PLRB erred in determining otherwise.[14]

---

[14] In the alternative, the State System also argues that we should affirm the PLRB's Final Order dismissing the Charge on different grounds, namely, that the Charge was not timely filed. Section 1505 of PERA states: "[n]o charge shall be entertained, which relates to acts which occurred or statements which were made more than four months prior to the filing of the charge." 43 P.S. §1101.1505. The four-month limitations period for the filing of an unfair labor practice charge under Section 1505 of PERA is triggered when the complainant has reason to believe that the unfair practice has occurred. *Lancaster County v. Pennsylvania Labor Relations Board*, 62 A.3d 469, 473 (Pa. Cmwlth. 2013). The State System argues that it implemented the Policy on February 25, 2015, thus making the Charge filed on August 18, 2015, untimely. However, when the Policy was initially implemented, no unfair labor practice occurred because Act 153 made the Policy's background checks and reporting requirements mandatory for all higher education employees. Under Section 703 of PERA, the parties could not bargain over the matter at that time because it would conflict with the General Assembly's enactment of Act 153.

It was only with the July 1, 2015, passage of Act 15 that the matter became bargainable. As the PLRB found:

> it is clear that [the Association] also charged [the State System] with violating Section 1201(a)(1) and (5) of PERA by refusing to bargain the Protection of Minors Policy, upon demand, following the Act 15 legislative changes to the CPSL on July 1, 2015. Indeed, [the Association]'s July 21, 2015 letter to [the State System] expressly stated that "[the Association] demands to bargain over the application of the above-described policy to employees not subject to the requirements of the [CPSL]. . . ." By letter dated August 7, 2015, [the State System] refused to bargain, stating that "requiring background screenings for current employees is a matter of inherent managerial prerogative and is not a mandatory subject of bargaining." To the extent [the Association] alleged that [the State System] refused its July 21, 2015 demand to bargain over submission of background clearances and reports of criminal arrests and child abuse for faculty not covered by the CPSL, [the Association]'s Charge of Unfair Practice filed on August 21, 2015, was timely filed with the [PLRB]

**(Footnote continued on next page…)**

Accordingly, the PLRB's Final Order is affirmed insofar as it finds the State System does not have to bargain over those employees who are required to obtain background checks under Act 15.  However, it is reversed to the extent that it provides the State System does not have to bargain over the implementation of the Policy regarding those employees that the General Assembly exempted from background checks pursuant to Act 15.

_____
DAN PELLEGRINI, Senior Judge

Judge Fizzano Cannon did not participate in the decision in this case.

---

**(continued…)**

within the four-month statute of limitations under Section 1505 of PERA.

(R.R. at 573a.)

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Association of Pennsylvania State   :
College and University Faculties,   :
                     Petitioner  :
                               :
            v.                :  No. 966 C.D. 2017
                               :
Pennsylvania Labor Relations Board,  :
                Respondent  :

# **O R D E R**

AND NOW, this <u>19th</u> day of <u>April</u>, 2018, the Final Order of the Pennsylvania Labor Relations Board is affirmed to the extent it finds the Pennsylvania State System of Higher Education (Intervenor) does not have to bargain over those employees who are required by the Child Protective Services Law to obtain background checks. The Final Order is reversed as to its finding that Intervenor does not have to bargain with Petitioner over requiring background checks for those employees who are not required to do so by the Child Protective Services Law.

 

 

_____
DAN PELLEGRINI, Senior Judge