## ASSOCIATION OF PENNSYLVANIA STATE COLLEGE AND UNIVERSITY FACULTIES, Petitioner,

v.

## PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued April 4, 1995.

Decided May 23, 1995.

Publication Ordered July 20, 1995.

2. A preliminary injunction is an extraordinary remedy available only where the party seeking it establishes that: 1) it is necessary to prevent immediate and irreparable harm not compensable in damages, 2) greater harm would result from denying it than from granting it, 3) the right to it is clear and 4) the status quo would be restored if it were to be granted. *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 7, 369 A.2d 1164, 1167 (1977).

Peter Lassi, for respondent.

Barbara A. McNeil, for intervenor, State System of Higher Educ.

Before DOYLE, SMITH, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

A hearing examiner for the Pennsylvania Labor Relations Board (PLRB) by decision and order dated April 5, 1995, dismissed an unfair labor practice charge by Association of Pennsylvania State College And University Faculties (APSCUF) against the State System of Higher Education (SSHE) "[b]ecause the charge is prematurely filed."

APSCUF timely filed exceptions to the proposed decision and order of the hearing examiner. The PLRB, by order dated June 21, 1994, dismissed the exceptions of AP-SCUF and "made absolute and final" the proposed decision and order of the hearing examiner. This appeal by APSCUF timely followed.

The relevant factual and procedural history giving rise to this matter is as follows. APSCUF is the certified collective bargaining agent for two units of professional employees of SSHE at the state universities of Pennsylvania which include, among others, all department chairmen, full time and part time teaching faculty and faculty members whose basic responsibilities lie outside the classroom setting, i.e., administration.

Despite the opposition of APSCUF, the Board of Governors of SSHE at its quarterly meeting on April 22, 1993 adopted a policy on Commonwealth Professor, Researcher or Administrator, as herein relevant, as follows:

Commonwealth Professor, Researcher or Administrator

A. Purpose

The purpose of the State System of Higher Education Commonwealth Professor, Researcher or Administrator is to allow the University/System and the Commonwealth of Pennsylvania to continue to benefit from an eligible individual's skill and experience as a teacher, researcher, or administrator, subsequent to significant service as a senior policy executive of the State System.

. . . .

C. Duties and Responsibilities

A Commonwealth Professor, Researcher or Administrator's specific duties and responsibilities are to be determined on an individual basis by the Board of Governors in consultation with the chancellor and the individual involved; if the chancellor is a candidate, then consultation occurs with the chancellor only. When the duties involve a specific campus assignment, the president and the appropriate academic/administrative department of the institution also will be consulted by the Board of Governors.

D. Salary and Conditions of Appointment

1. The salary and other terms and conditions of employment of a Commonwealth Professor, Researcher or Administrator will be established by the Board of Governors, except that the salary will be computed at a rate of 66.6 percent of the individual's salary at the time of appointment to a position covered by this policy for a nine month appointment. Benefits provided will be those afforded under the Management Benefits Plan.

2. Following appointment as a Commonwealth Professor, Researcher or Administrator, an individual will be eligible for salary increments only as periodically determined by the Board of Governors.

. . . .

E. Effective Date

This policy is to be effective for persons appointed to eligible positions and for persons whose contracts are extended in eligible positions, subsequent to adoption by the Board of Governors.

F. Implementation

This policy requires implementation procedures. In so far as terms and conditions of employment in certain bargaining units are impacted, the chancellor is directed to negotiate implementation procedures with the appropriate bargaining agents.

(R.R. 130a–131a.)

On May 3, 1993, APSCUF filed with the PLRB a charge of unfair labor practice, as amended May 27, 1993, against SSHE, alleging that "unfair labor practices occurred when the employer unilaterally created a new classification of employees … and assigned to them work performed by the AP-SCUF bargaining unit, and granted them faculty rank, a benefit of employment that may be granted only to members of AP-SCUF bargaining unit, and other terms and conditions of employment without negotiation with APSCUF."

The hearing examiner found as a fact (FOF 8) that James H. McCormick, by letter dated April 26, 1993, informed Dr. James W. White, President of APSCUF, as follows:

Dr. James W. White
President
Association of Pennsylvania State College and University Faculties
319 North Front Street
P.O. Box 11995
Harrisburg, PA 17108

Dear Dr. White (Jim):

I am pleased to provide you with a copy of the policy on Commonwealth Professor, Researcher or Administrator adopted by the Board of Governors at its quarterly meeting on April 22, 1993, at California University of Pennsylvania.

Section F of this policy requires that implementation procedures be negotiated with appropriate bargaining agents. In these matters, Vice Chancellor Kelley will serve as my designee. So that discussion about the procedures may be opened, please advise Mr. Kelley's office (717–783–2329) regarding dates and times you will be ready to initiate this process.

Thank you for your attention to this important matter.

(R.R. 129a.)

The hearing examiner also made the following findings of fact:

9. That APSCUF did not contact Mr. Kelley to negotiate over the implementation of the policy. (N.T. 16–17, 30)

10. That no one has applied to SSHE for a position under the policy. (N.T. 33, 37–38)

(Appendix A Brief of Appellant.)

In its appeal here, APSCUF argues (1) that SSHE committed an unfair labor practice by adopting, without bargaining with APSCUF, a policy which authorized the SSHE to assign bargaining unit work to non-bargaining unit members; (2) the unfair labor practice charge was not premature, as the Board held, because the adoption of the policy itself constituted an unfair labor practice. However, even if the adoption of the policy did not automatically constitute an unfair labor practice, the Board improperly refused to perform its statutory duty to prevent unfair labor practices by dismissing AP-SCUF's charge on the ground that it was premature because bargaining unit work had

not yet been taken away; (3) the Board erred in failing to require the SSHE to meet and discuss the policy prior to implementing it when the policy obviously affected the wages, hours, terms and conditions of the bargaining unit employees.

Our scope of review is limited to determining whether the findings of the PLRB are supported by substantial evidence, and whether there has been a constitutional violation or an error of law committed. *Harbaugh v. Pennsylvania Labor Relations Board*, 107 Pa.Commonwealth Ct. 406, 528 A.2d 1024 (1987). APSCUF does not herein allege a constitutional violation nor contest the findings of the PLRB; thus, our review is solely concentrated upon the legal conclusions of the PLRB. *See, Abington Transportation Ass'n v. Pennsylvania Labor Relations Board*, 131 Pa.Commonwealth Ct. 267, 570 A.2d 108 (1990).[1]

As was determined by the PLRB, it is undisputed that a public employer commits an unfair labor practice if it unilaterally transfers bargaining unit work to persons outside the unit, such persons being non-bargaining unit employees of that same employer, outside contractors, volunteers, etc., without prior negotiation with the employee representative. *Pennsylvania Labor Relations Board v. Mars Area School District*, 480 Pa. 295, 389 A.2d 1073 (1978); *Elizabeth Forward School District v. Pennsylvania Labor Relations Board*, 154 Pa.Commonwealth Ct. 5, 624 A.2d 215 (1992), *appeal denied*, 531 Pa. 657, 613 A.2d 562 (1992); *Commonwealth v. Pennsylvania Labor Relations Board (Ebensburg)*, 130 Pa.Commonwealth Ct. 426, 568 A.2d 730 (1990), *appeal denied*, 527 Pa. 625, 592 A.2d 46 (1991); *Commonwealth v. Pennsylvania Labor Relations Board (Polk Center)*, 125 Pa.Commonwealth Ct. 114, 557 A.2d 1112 (1989), *appeal denied*, 525 Pa. 587, 575 A.2d 117 (1990); *Clairton v. Pennsylvania Labor Relations Board*, 107 Pa.Commonwealth Ct. 561, 528

A.2d 1048 (1987); *Minersville Area School District v. Pennsylvania Labor Relations Board*, 82 Pa.Commonwealth Ct. 506, 475 A.2d 962 (1984).

However, as noted by the PLRB and expressed by the hearing examiner[2]:

"SSHE's vice chancellor for labor relations (Edward Kelley) testified that under the policy in question an individual could be appointed to administrative work which does not constitute APSCUF bargaining unit work. Therefore, actual implementation of the policy might or might not involve bargaining unit work. Indeed, the policy expressly states that '[a] Commonwealth professor, researcher *or administrator's specific duties and* responsibilities are to be determined on an individual basis.' Therefore, SSHE has stated no clear intention to transfer APSCUF bargaining unit work to a non-bargaining unit employe and we must agree with the hearing examiner that APSCUF's unfair practice charge is premature.

See opinion of PLRB at p. 2.

Upon our review, we agree with the determination of the PLRB. The record contains no evidence that any bargaining unit work has actually been assigned to persons outside the unit. The policy adopted by the SSHE states, in relevant part:

[W]hen implementation of this policy involves the assumption of bargaining unit work the appropriate bargaining unit representative will be engaged in negotiations.

Thus, all that exists is an indication in the policy that the SSHE may seek to make such an assignment at some point in the future.

A refusal to bargain charge will be dismissed as premature when the action at issue has not been implemented, leaving the PLRB unable to determine its relative impact on the parties involved and unable to dispositively rule upon whether an unfair practice has occurred. In such a case, as

---

1. We note that APSCUF mistakenly cites the standard of review applicable when the appeal is taken initially to the common pleas court pursuant to the Judicial Code.

2. The hearing examiner concluded that the charge of APSCUF was prematurely filed, based

upon a determination "that until the policy is actually implemented, there is no way to gauge its impact on the bargaining unit." See Proposed Decision and Order of the hearing examiner at p. 9.

here, it is imperative that the PLRB be able to determine the relative impact the matter has on the parties because only those matters which have a greater impact on employee terms and conditions of employment than on the basic policy of the employer's system as a whole are mandatorily bargainable. *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975). The determination that the present charge was premature, and its subsequent dismissal, was proper.[3]

### ORDER

AND NOW, this 23rd day of May, 1995, the Final Order of the Pennsylvania Labor Relations Board dated June 21, 1994 is affirmed.

---

**3.** Because of our disposition of this matter, it is not necessary to address the other issues raised by APSCUF.