IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,               :
           Petitioner        :
                          :
       v.                 :
                          :
Pennsylvania Labor Relations Board,  :   No. 1052 C.D. 2019
           Respondent     :   Submitted: November 12, 2020

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                           FILED: December 14, 2020

The City of Philadelphia (City) petitions this Court for review of the Pennsylvania Labor Relations Board's (Board) July 16, 2019 order (Final Order) dismissing in part and sustaining in part the Fraternal Order of Police, Lodge No. 5's (FOP) exceptions to the Hearing Examiner's August 16, 2018 Proposed Decision and Order (PDO), and making the PDO absolute and final, as modified. There are four issues before this Court: (1) whether the City has standing to appeal from the Board's Final Order; (2) whether the Board's Final Order is supported by substantial evidence; (3) whether the Board erred by concluding that confidentiality is a term and condition of employment and was at least as equally important and weighty as the City's interest; and (4) whether the Board erred by holding that the City's interest in fostering public trust in the police would not be unduly burdened by negotiating the City's policy regarding releasing the names of police officers involved in shootings. After review, the City's petition for review (Review Petition) is quashed.

On May 29, 2015, the City's Police Department's (Police Department) Research and Planning Unit forwarded to the FOP, via electronic mail, Use of Force Directives (Directives) that the City's Police Commissioner (Police Commissioner) had revised and approved.[1] The Directives authorized the City to publicly release the names of police officers involved in police officer-involved shootings. The Directives were not published or codified.

On June 2, 2015, the FOP filed with the Board a Charge of Unfair Labor Practices, docketed at Case No. PF-C-15-42-E (Case 42-E), as amended on July 2, 2015, alleging therein that the City violated Section 6(1)(a) and (e) of the Pennsylvania Labor Relations Act (PLRA),[2] as read in *pari materia* with the act commonly referred to as Act 111,[3] by unilaterally implementing the Directives (Case 42-E Charge). The Police Department subsequently decided to submit the Directives to the FOP for further review. On July 2, 2015, Lieutenant Kevin Long, on behalf of the Police Commissioner, emailed to the FOP a protocol for releasing the names of police officers involved in shootings.

On July 8, 2015, the FOP filed a Charge of Unfair Labor Practices, docketed at Case No. PF-C-15-53-E (Case 53-E) with the Board, alleging therein that the City violated Section 6(1)(a), (c),[4] and (e) of the PLRA, as read in *pari materia* with Act 111, by refusing to provide protection for a police officer after his/her name was released to the public following an officer-involved shooting (Case 53-E Charge). The Board Secretary issued a Complaint and Notice of Hearing for

---

[1] Prior thereto, the City did not have a formal written policy regarding the release of names of police officers involved in shootings. Instead, its longstanding practice was that the City would not release an officer's name unless the officer had been shot or was cited for heroic actions.

[2] Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. § 211.6(1)(a), (e).

[3] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1-217.12.

[4] 43 P.S. § 211.6(1)(c).

2

each Charge (collectively, Charges), and Case 42-E and Case 53-E (collectively, Cases) were consolidated.

On August 27, 2015, the Police Department's Research and Planning Unit forwarded to the FOP, via electronic mail, revised and renumbered Directives that the Police Commissioner had approved. On September 18, 2015, Directives 10.1 through 10.4 became effective.

The Hearing Examiner held hearings on September 26, 2016, and December 11, 2017, during which the parties were afforded a full opportunity to present evidence. Based on the testimony and evidence presented, the Hearing Examiner found that the Case 42-E Charge was premature because it was filed before the Directives became effective. As a result, the Hearing Examiner determined that the Case 42-E Charge should be dismissed as a matter of law.[5] Notwithstanding, the Hearing Examiner concluded that, even if the Case 42-E Charge was timely, the name-release protocol involved matters of inherent managerial prerogative. The Hearing Examiner further found that the FOP failed to sustain its burden of proof for the Case 53-E Charge and, thus, dismissed it and rescinded the complaint related thereto.

The FOP filed exceptions to the PDO, therein asserting, *inter alia*, that the Hearing Examiner erred by concluding: the Case 42-E Charge was premature; the Directives and the name-release policy were a management prerogative; the FOP failed to meet its burden of proof in Case 53-E to demonstrate the City was

---

[5] This Court has explained that "the Board will dismiss a refusal to bargain charge as premature when an employer's unilateral action has not actually effected a change in the employees' conditions of employment or if the charge has been filed before the effect of such a change can be determined." *Dormont Borough v. Pa. Labor Rels. Bd.*, 794 A.2d 402, 408 n.17 (Pa. Cmwlth. 2002); *see also Ass'n of State Coll. & Univ. Faculties v. Pa. Labor Rels. Bd.*, 661 A.2d 898, 901 (Pa. Cmwlth. 1995) (A "charge will be dismissed as premature when the action at issue has not been implemented, leaving the [Board] unable to determine its relative impact on the parties involved and unable to dispositively rule upon whether an unfair practice has occurred.").

3

unlawfully motivated in failing to provide protection to a police officer whose name was released to the public; and the Case 53-E Charge should be dismissed because the FOP failed to meet its burden of demonstrating that the City repudiated a provision of the governing collective bargaining agreement. *See* Reproduced Record at 30a-32a.

On July 16, 2019, the Board issued its Final Order, concluding that the Hearing Examiner properly determined that the Case 42-E Charge was prematurely filed, and correctly dismissed the Case 53-E Charge because the City did not violate the PLRA.

With respect to the FOP's exception to the Hearing Examiner's conclusion that the City's Directives and the protocol for releasing the names of officers involved in shootings were matters of inherent managerial prerogative, the Board concluded: "[H]ad the [Case 42-E Charge] not been prematurely filed before implementation, we would find that the City's protocol for release of police officer[s'] names when they were involved in a shooting would be a mandatory subject of bargaining[.]" Final Order at 6-7. The City appealed to this Court.[6] On September 17, 2019, the Board filed a Motion to Dismiss the Petition for Review (Motion), arguing therein that, as the prevailing party, the City is not aggrieved and lacks standing to appeal; therefore, the City's Review Petition should be dismissed. On October 21, 2019, this Court ordered the parties to address the issue of the City's standing to appeal in their principal briefs on the merits.

Preliminarily, before this Court reviews the merits of the City's appeal, we must address the Board's contention that the City lacks standing to appeal because the City, as the prevailing party below, is not aggrieved by the Board's Final Order.

---

[6] On September 3, 2019, the FOP intervened in this matter.

In its Review Petition, the City admits:

> The [Board] properly concluded that both [C]harges should be dismissed as a matter of law because they were filed prematurely, the City has a managerial prerogative to set its use of force policies, and it did not retaliate against officers who had moved out of the City in the protection afforded to them if their names were released. The City does not challenge those portions of the Final Order.

Review Petition at 3 n.1. Thus, the City challenged only the Board's discussion, analysis and conclusion that "the City's protocol for release of police officer[s'] names when they were involved in a shooting would be a mandatory subject of bargaining[.]" Final Order at 6-7; *see* Review Petition at 3-5.

> The law is well established:
>
> Only an aggrieved party can appeal from an order entered by a lower court. *A prevailing party that disagrees with the legal reasoning of an order or a court or agency <u>or may have had a particular issue decided against it</u> lacks standing to appeal because it is not adversely affected by the order.*

*Maple St. A.M.E. Zion Church v. City of Williamsport*, 7 A.3d 319, 322 (Pa. Cmwlth. 2010) (italic and underline emphasis added); *see also Allentown Patriots, Inc. v. City of Allentown*, 162 A.3d 1187, 1193 n.10 (Pa. Cmwlth. 2017) ("[A] prevailing party [that] disagrees with the legal reasoning of a court's determination of a legal issue lacks standing to appeal because the party is not adversely affected by the order."); *In re Chester Cnty. Outdoor, LLC*, 64 A.3d 1148 (Pa. Cmwlth. 2013); *Hartman v. City of Allentown*, 880 A.2d 737 (Pa. Cmwlth. 2005).

The City nevertheless argues that it has standing to challenge the Board's legal analysis and conclusion that "the City's protocol for release of police officer[s'] names when they were involved in a shooting would be a mandatory subject of bargaining[,]" despite that it prevailed before the Board. Final Order at

5

6-7. Specifically, the City asserts that it is aggrieved because "the Board's ruling on the release-of-names issue could adversely affect it through lost leverage in subsequent negotiations . . . where the opposing side will certainly highlight the Board's decision here." City Br. at 30.

In its brief to this Court, the City cites to only a single unreported opinion in support of its position, *Penn Township v. Penn Township Police Ass'n* (Pa. Cmwlth. No. 905 C.D. 2007, filed May 13, 2008).[7] In *Penn Township*, the police union grieved an employee's denial of heart and lung benefits. The township disputed that the issue was arbitrable. Ultimately, the arbitrator held that the dispute was arbitrable, but the township prevailed on the merits. The township appealed from the arbitrability decision, and the Court concluded that the township was aggrieved because it had a direct, immediate, and substantial interest in that determination, explaining:

> [The a]rbitrator here undeniably rendered an adverse decision to [the t]ownship regarding arbitrability *during a bifurcated proceeding*. *This decision <u>could not</u> be appealed until after [the a]rbitrator rendered his opinion on the merits*. **Our review here is of the decision on jurisdiction, and not on the merits**; therefore[,] [the t]ownship had **a direct, immediate, and substantial interest in the jurisdictional determination**. Simply stated, [the t]ownship is an aggrieved party for purposes of this appeal.

*Penn Twp.*, slip op. at 7 (citation omitted; bold and italic emphasis added). Thus, the bifurcated *Penn Township* case is distinguishable from the instant case.

In its reply brief, the City further responds to the Board's argument that the City lacks standing. The City claims that, since the Board in its Final Order

---

[7] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

dismissed in part and sustained in part the exceptions, and made the PDO final as modified, the Board's mandatory bargaining discussion was not dicta. Citing the Pennsylvania Supreme Court's decision in *Commonwealth v. Lee*, 935 A.2d 865, 867 n.4 (Pa. 2007), defining *dicta* as "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential . . ." (quoting *Black's Law Dictionary* 1100 (7th ed. 1999)), the City insists that the Board's mandatory bargaining discussion is necessary to the Board's Final Order.

This Court has also explained:

> Judicial dictum has been defined as '[a]n opinion by a court on a question that is directly *involved, briefed, and argued by counsel, and even passed on by the court*, but that is **not essential to the decision**.' Black's Law Dictionary at 465 (emphasis added). Dicta has no precedential value.

*City of Lower Burrell v. City of Lower Burrell Wage & Policy Comm.*, 795 A.2d 432, 437 n.7 (Pa. Cmwlth. 2002) (italic and bold emphasis added); *see also Stellwagon v. Pyle*, 133 A.2d 819, 823 (Pa. 1957) (Language employed in an opinion "must be related to the issue decided; when it goes beyond that, it must be considered dictum[.]"); *Valley Twp. v. City of Coatesville*, 894 A.2d 885 (Pa. Cmwlth. 2006). **Disagreement with dicta does not render a prevailing party aggrieved**. *See Bldg. Indus. Ass'n of Lancaster Cnty. v. Manheim Twp.*, 710 A.2d 141 (Pa. Cmwlth. 1998).

In *Building Industry Association*, the Building Industry Association of Lancaster County appealed to this Court from a trial court's order dismissing its declaratory judgment action, and challenging a township ordinance which imposed an impact fee on developers. The township cross-appealed from the order, challenging dicta in the trial court's opinion that, if the association had standing to bring its claim, the trial court would have been inclined to rule for the association.

7

After explaining that only an aggrieved party has standing to appeal, this Court noted that "the [t]ownship argues that it has been aggrieved by the dicta in the opinion of the [trial court]." *Bldg. Indus. Ass'n*, 710 A.2d at 147. In dismissing the township's cross-appeal, this Court concluded: "[I]t is clear that [the t]ownship merely disagreed with the 'opinion' of the [trial court] regarding the merits of [the association's] complaint. Therefore, we hold that [the t]ownship was not 'aggrieved' for purposes of appellate review . . . ." *Id*. at 148.

Here, the Board decided that the Hearing Examiner properly dismissed the Charges and, thus, the Board's Final Order dismissed the Charges in the City's favor. Given the Board's conclusion that the Hearing Examiner properly dismissed the Case 42-E Charge as premature, the Board's discussion with respect to mandatory bargaining was **not essential** to the Board's ultimate decision in the City's favor and, thus, was dicta. *See Stellwagon*; *City of Lower Burrell*. This conclusion is buttressed by the **Board's hypothetical language**, that "**had** the [**Case 42-E Charge**] **not been prematurely filed** before implementation, **we would find** that the City's protocol for release of police officers['] names when they were involved in a shooting **would be** a mandatory subject of bargaining[.]"[8] Final Order

---

[8] Curiously, the Board, in the discussion portion of its Final Order, addressed the mandatory bargaining issue in a hypothetical context and did not explicitly sustain the FOP's exception on that issue. Further, the Board concluded the discussion portion, stating:

> After a thorough review of the exceptions and all matters of record, the Hearing Examiner did not err in concluding that the [Case 42-E Charge] was prematurely filed, and therefore the City did not violate Section 6(1)(a) and (e) of the PLRA. Additionally, the Hearing Examiner did not err in Case [53-E] in concluding that the City did not violate Section 6(1)(a) and (c) of the PLRA when it did not provide a 24/7 security detail to a police officer who resided outside of the City. **Accordingly, the exceptions filed by the FOP at Case [42-E] and [Case 53-E] shall be dismissed, and the** . . . **PDO made absolute and final**.

8

at 6-7 (bold and underline emphasis added). Accordingly, the Board's opinion on the merits of the Case 42-E Charge was *not essential* to the Board's timeliness decision but, rather, described what the Board *would have* decided had it substantively ruled thereon. Although the City "disagrees with the legal reasoning of [the Board's Final Order] or may have had [the mandatory bargaining] issue decided against it[, the City] lacks standing to appeal because it [wa]s not adversely affected by the [Board's Final O]rder." *Maple St. A.M.E.*, 7 A.3d at 322. Because the City lacks standing to appeal the Board's Final Order, this Court quashes the City's Review Petition. *See Keystone Redevelopment Partners, LLC v. Pa. Gaming Control Bd.*, 5 A.3d 448 (Pa. Cmwlth. 2010); *see also Capital BlueCross v. Ins. Dep't*, 937 A.2d 552 (Pa. Cmwlth. 2007), *appeal denied sub nom. Sklaroff v. Ario*, 963 A.2d 906 (Pa. 2009) (where appellant lacks standing to appeal agency adjudication, the proper remedy is to quash the petition for review).

For all of the above reasons, the Board's Motion is granted and the City's Review Petition is quashed.[9]

_____
ANNE E. COVEY, Judge

---

Final Order at 9 (footnote omitted; emphasis added). However, the order portion of the Final Order states that "the exceptions filed by the [FOP] are hereby **dismissed in part**, **and sustained in part**, and the [PDO], be and hereby is made absolute and final, **as modified herein**." Final Order at 9 (emphasis added). Nonetheless, the Charges were dismissed and the City prevailed. Thus, the City is not aggrieved.

[9] Given this Court's conclusion, we do not reach the City's substantive issues.

9

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia, :
            Petitioner :
             :
         v. :
             :
Pennsylvania Labor Relations Board, : No. 1052 C.D. 2019
         Respondent :

## O R D E R

AND NOW, this 14th day of December, 2020, the Pennsylvania Labor Relations Board's Motion to Dismiss Petition for Review is GRANTED and the City of Philadelphia's Petition for Review is QUASHED.

_____
ANNE E. COVEY, Judge